The Cleveland and Pittsburg Railroad Co. *versus* Rowan and Wife.

1. In an action for death by negligence, it is not necessary in the first place to disprove contributory negligence in the deceased.

2. If negligence appears by the plaintiff's testimony the defendant may rest upon it.

3. Love of life and the instinct of preservation being the highest motive for care, they will stand for proof of it, until the contrary appear.

4. The statutory rule since the Act of April 4th 1868 is that exemplary

[Cleveland & Pittsburg Railroad Co. *v.* Rowan.]

damages cannot be recovered, but only compensation for loss which has been pecuniarily suffered.

5. Whether the statute applies to injuries not resulting in death, damages for which are a common-law right, not decided.

6. Damages for death are exclusively statutory and are capable of restriction and limitation by the legislature.

7. In an action by a parent for the death of a child, damages may be recovered for nursing, medical expenses before death and funeral expenses.

November 4th 1870.　Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 131, to October and November Term 1869.

This was an action on the case commenced, November 24th 1865, by Samuel Rowan and Margaret his wife in her right, against the Cleveland and Pittsburg Railroad Company, John Turner and Robert Chisholm, to recover damages for the death of Henry Halleck, a son, about eighteen years old, of Mrs. Rowan, occasioned as was alleged by the negligence of the defendants.

At Edgeworth station, about 15 miles west from Pittsburg, the tracks of the Cleveland and Pittsburg Railroad and the Pittsburg, Fort Wayne and Chicago Railway running east and west are parallel and near to each other ; they are there crossed at grade by a township road.　On the north side of the tracks are two platforms separated by the township road, and on the south side of the track two platforms separated by the same road.　In August 1865, Halleck was a passenger in company with Miss Pancake in the Fort Wayne, Pittsburg and Chicago accommodation train from Pittsburg, which reached Edgeworth about 3 o'clock in the afternoon.　They left the train at Edgeworth, getting out at the platform on the north side of the railroad and on the east side of the township road ; they started along the township road to cross the railroad, and just as they got on the southern track, the Cleveland train going towards Pittsburg came up with great rapidity, struck both of them and so severely injured Halleck that he died about three hours afterwards.

There was much evidence by the plaintiffs as to the circumstances attending the disaster ; that Edgeworth was not the usual place for the trains to pass ; that the defendants' train was moving at a very high rate of speed, &c.　There was evidence that when Halleck and his companion got out of the train, he waited till it moved on ; that when he started to cross the track he looked down it and then stepped across ; there was evidence that the Fort Wayne train threw out much smoke and steam, and prevented persons from seeing down the road in the direction from which the defendants' train was coming.　There was evidence by the defendants for the purpose of showing that Halleck did not exercise proper care in crossing the track.　The evidence was conflicting

as to sounding the whistle and ringing the bell of the engine of the defendants. There was much evidence by the defendants to show they had not been guilty of negligence.

The plaintiffs submitted seven, and the defendants ten points.

The plaintiffs' 6th point was:—

"If the jury believe from the evidence that the defendants' servants, at the time in question, were guilty of gross negligence in reckless running of the train, and that by reason thereof the deceased was killed, the jury may give exemplary damages."

The court answered:—

"Affirmed—'If they, from the evidence, find that deceased did not contribute to his own death.'"

The court (Kirkpatrick, J.) charged:—

* * * "We instruct you as matter of law that the burden of proof is upon the plaintiffs, and that to enable them to recover they must make out their case by clear and satisfactory proofs, of the clearness and satisfactory character of which you are the exclusive judges.

"That if there was mutual or contributing negligence there can be no recovery.

"That if the deceased (Halleck) in any degree contributed to the catastrophe, there can be no recovery.

"That it was his duty before attempting to cross these tracks to stop, look and listen, and if he did not do so, and his death was occasioned thereby, the plaintiff cannot recover.

"That if you are satisfied from all or any of the testimony in this case, that he, before crossing, did stop, and looked up and down the track, you have a right to presume that he listened, for whilst it is true that he was, as we have instructed you, bound before crossing to have stopped, looked and listened, to prove that he listened is impossible, and can in my judgment be fairly inferred from the fact of his having stopped and looked, if you shall so find.

"That the law fixes no length of time during which he should have stopped, looked and listened, and if you should be of opinion under all the circumstances of the case that stopping for a moment even was sufficient, it is enough, for the law makes you the judges of what ordinary care and prudence demanded and the peculiar circumstances of the case required.

"That if this injury resulted from a want of ordinary care and prudence upon the part of the defendants and deceased, neither would have a remedy against the other, and the plaintiff cannot recover.

"That whether there was or was not the presence or absence of ordinary prudence upon the part of both the deceased and defendants, you will determine from all the evidence in the cause, and what would be ordinary care and prudence on the part of

[Cleveland & Pittsburg Railroad Co. *v.* Rowan.]

either party must be judged of by you by considering the character of the crossing—such as its being at grade, the importance of the station, the likelihood, or the reverse, of persons being on the track, and all the other surroundings and circumstances connected therewith, of all of which both deceased and defendants were bound to take notice.

"That when the deceased approached the crossing it was his duty, as we have already said, to stop, look and listen for approaching trains, and if he failed to do so, such failure is not merely evidence of neglect, but the law declares it to be negligence, and it will prevent any recovery of damages resulting from his attempting to cross, no matter whether the defendants were guilty of negligence or not, if such failure on the part of the deceased contributed to his death. But if you should find from all the evidence in the case that, in your judgment, he did stop, look and listen for trains in proper manner and for sufficient time, no matter how short the time of his stoppage may have been, and could neither hear nor see any train approaching, then he was obliged to go upon the track or tracks, and cross the same with all reasonable and proper speed, and if his death resulted in his so doing, the plaintiffs are entitled to recover.

"That it was the duty of these defendants, or their employees in charge of this train, on this occasion, upon approaching this public crossing, to give notice by ringing the bell, blowing the whistle, or by some other means sufficient to warn travellers of their approach, at sufficient distance from the crossing to afford time for all parties crossing or approaching, to stop in a place of safety, or if on the track to get out of danger. It was also their duty to look along the track, and if they saw, or might have seen, by the use of due care and caution, the deceased and his companion upon the track, to have checked up their train by the use of every and all means in their power, so as, if possible, to have prevented the accident, and if they failed in any one of these duties, and the death of Halleck resulted therefrom, without any concurring negligence on his part, these defendants are responsible, and your verdict must be for the plaintiffs.

"You will observe, that I say these defendants were bound, upon their approaching this important station and public crossing, to have given warning sufficient to notify all persons upon the track, or the crossing, at Edgeworth station. I beg your attention to this, I say, as the Supreme Court has intended me to say, 'sufficient warning.' It is not enough that they blew a whistle for this station or public crossing at Leetsdale, or Shield's Nursery, or six or seven telegraph poles' distance away. It is not enough that they rang a bell continually from Leetsdale to the very spot of the catastrophe, if you please; they must go further

[Cleveland & Pittsburg Railroad Co. *v.* Rowan.]

in this line of their defence, and show not only that they blew their whistle and rang their bell, but they must satisfy you that they did so in such manner and to such extent as to warn these parties, or others, upon the crossing at Edgeworth station, of their approach, provided they had been using ordinary and proper care and prudence to catch or hear the same.

" Now, did they do so ?    True, they have proven that they blew their whistle, that they rang their bell, and the witnesses have been placed upon this stand who testify, no doubt truly, that they themselves did so.   But how ?   Was it sufficient for the purposes intended, and the only purposes for which it could have been intended—viz.: warning and notice ?   If it was, then why was it not heard—if it was not heard by any of those, at or in the vicinity of the station or crossing, for whom was it intended ?   If it was not sufficient, if it did not answer the purpose upon persons at the crossing or station, if you should find they were using ordinary and proper care and prudence to catch the note of warning, then it might as well not have been done at all, for the object and purpose of the act was unaccomplished, and the mere fact of their having rung their bell or blown their whistle will avail these defendants nothing in this line and aspect of their defence.   It was at the crossing or station, and not upon the train, that the ringing of the bell and blowing of the whistle were intended to be heard.   Whether, however, the warning was sufficient, whether it could have served the intended purpose if it had fallen upon properly listening and attentive ears, and whether these ears have been properly and prudently attentive and listening, without expressing any opinion, we leave you to discover from all the evidence in this case.

" These defendants had undoubtedly the right to a clear track, and to run their trains at a reasonable and ordinary rate of speed, but where public highways such as this was, cross the track of the railroad, neither they nor the public, the deceased or plaintiffs, have the exclusive right to a clear passage.   The rights of both are necessarily restricted by public necessity and convenience, and if they, the defendants, have been guilty of negligence, the plaintiff is entitled to recover, and if both parties are or were guilty of negligence, no recovery can be had.

" Negligence, we instruct you, consists in the absence of that ordinary care which a party ought to observe under the particular circumstances of the case.

" Whether there was such on the part of either or both of the parties here, we leave you to discover from all the evidence in the case, having already informed you what was the duty of each in the premises.

" Let us now pass to the consideration of the question of damages.

" Should you be of opinion that, under all the circumstances

[Cleveland & Pittsburg Railroad Co. *v.* Rowan.]

and exigencies in this case, the plaintiffs are entitled to recover, and in regard to this we express no opinion, let us see what damages they are entitled to recover under the law. We instruct you that they are entitled to recover:

"1st. The expenses of care and attention to the deceased during and after injury.

"2d. They are entitled to funeral expenses.

"3d. To medical services, if any.

"4th. The pecuniary value of his services during his minority, which you will discover and determine from all the evidence in this case.

"What it should be, or what it would amount to, is for your determination exclusively. * * *

"We instruct you, therefore, that the rule of damages is as already laid down by us, and what the damages shall be, under and restricted by this rule, we leave you to discover—as it is your especial province and duty—from all the evidence submitted by the plaintiffs and defendants in this aspect of the case." * * *

The verdict was for the plaintiffs for $2372.93. The defendants removed the case to the Supreme Court by writ of error and assigned 15 errors. The 10th was the answer to the plaintiff's 6th point.

*S. Schoyer*, for plaintiffs in error.—One crossing a railroad and not stopping and looking both ways is guilty of negligence : Evans *v.* P. F. W. & C. R. R. Co., 3 P. F. Smith 250 ; R. R. Co. *v.* Heileman, 13 Wright 60 ; P. R. Co. *v.* Henderson, 7 Id. 449 ; R. R. Co. *v.* Coyle, 5 P. F. Smith 396. He is chargeable with opportunities of knowledge : R. R. Co. *v.* Henderson, 7 Wright 449. The fault is, primâ facie, that of the person crossing the railroad; he must show, affirmatively, that it was not his fault : Telfe *v.* Northern R. R. Co. (N. J.) 3 Am. Law Reg. N. S. 670 ; Evans *v.* P. F. W. &.C. R. R., *supra*. Compensation was all the plaintiffs were entitled to : Heil *v.* Glanding, 6 Wright 499. The damages were the profit which the parent might derive from the son's services, from which are to be deducted his expenses : Penna. R. R. *v.* Kelly, 7 Casey 381 ; Same *v.* Butler, 7 P. F. Smith 338 ; Catawissa R. R. *v.* Armstrong, 2 Id. 286.

*T. M. Marshall* and *A. M. Watson,* for defendants in error, cited as to the measure of damages : McCloskey *v.* Penna. R. R., 11 Harris 530. As to negligence of the company and contributory negligence : N. Penna. R. R. *v.* Robinson, 8 Wright 175 ; Reeves *v.* Railroad, 6 Casey 461.

The opinion of the court was delivered, January 3d 1871, by THOMPSON, C. J.—Only two or three of the numerous assign-

ments of error in this case, we think, call for any special notice at the hands of this court.　We regard the others as self-vindicated.

It was contended in argument, on part of the plaintiff in error, that the plaintiffs below had the *onus* of showing affirmatively that the deceased was guilty of no negligence or want of care at the moment of the disaster to him.　This is in one sense the rule, but not as broadly as it has been stated.　It is true that negligence on his part would defeat the plaintiff's right of recovery; but to call witnesses to declare the absence of negligence of the kind insisted on, or to prove acts negativing negligence before the defendant is bound to answer, is not required in the first place. It is not a necessary averment in the *narr.,* and is, therefore, not required to be proved until the opposite is set up in defence.　It is true, if negligence appear by the plaintiff's own testimony, the defendant might rest on it as securely as if proved by himself. As the love of life and the instinct of preservation are the highest motive for care in any reasoning being, they will stand for proof of care until the contrary appears: Railroad *v.* Hagan, 11 Wright 244; Railroad Co. *v.* Hall, 11 P. F. Smith 361; Allen *v.* Williard, 7 Id. 374.　But there was proof of acts on part of the deceased clearly evincive of care on part of the deceased before he took the fatal step, to wit: looking and apparently listening in the direction of the approaching train.　His advance, and that of his companion, a young lady, who was also struck and injured at the same time, corroborated what the witness testified to, viz: that they took the ordinary precaution to avoid danger by looking and listening before they stepped on the track.　This was referred to the jury on the question of care on part of the deceased, and they have found, in accordance therewith, that there was no negligence. There was no error in this, and this assignment is not sustained.

2. But we think there was error in affirming the plaintiff's 6th point, in regard to exemplary damages.　There may be some *dicta* previous to the Act of 4th April 1868, seeming to favor this idea, but the reasoning of all the cases, when carefully considered, is the other way; but the last-named act settles the law very definitely, if the least doubt existed as to the rule, and this act was in force when this cause was tried.　The portion of the act I refer to is as follows: "In all actions *now* or hereafter instituted against common carriers, or corporations, * * * to recover for loss of life * * * and for which by law, such carrier or corporation could be held responsible, only such compensation for loss * * * shall be recovered as the evidence shall clearly prove to have *been pecuniarily suffered or sustained.*"　I understand this to have been the rule prior to the passage of the act, notwithstanding a *dictum* or two to the contrary.　It is now the rule of this statute, and as such to be obeyed where the action is for the loss of life.　I say

[Cleveland & Pittsburg Railroad Co. v. Rowan.]

nothing about the cases of "personal injuries" not followed by death. The rights of action in the class of cases mentioned in the act are of different origin. The one is, and ever has been, a common-law right—the other is exclusively statutory, and capable of restriction and limitation by the legislature. Even where exemplary damages may be given, and it cannot be denied there are instances in which they are allowable, they are not given as compensation, but as a punishment for the wantonness or bad conduct of the wrongdoer,—not because the recipient of them has sustained a loss measured by them. In this act there is a stringent prohibition against the recovery of any damage for loss of life not *pecuniarily suffered ;* exemplary damages would therefore directly conflict with this provision of the act, if allowed. This view sustains, beyond controversy, the error assigned, and for this reason the judgment below must be reversed.

There was no error in instructing the jury, that in assessing damages, they might include nursing after the injury and before death, medical expenses if any, and funeral expenses. This we said in the Railroad Co. v. Bantom, 4 P. F. Smith 495, and in other cases which I cannot lay my hands on at this moment. The Act of 1868 does not change this rule.

We discover no error in what was said in relation to the company. The question of negligence on their part, as well as on part of the deceased, was properly left to the jury, with adequate instructions. We have no fault to find with them. But for the reason given, this judgment must be reversed.

Judgment reversed, and *venire de novo* awarded.