Raymond P. WALSH, Sr., Patricia Walsh, Individually and as Administrators of the Estate of Michael T. Walsh, Deceased, Plaintiffs

v.

Robert STRENZ and DWG Brownies, Inc., Defendants

v.

P.D.O., Inc., t/a Floods and Blast 2 the Past Productions, Inc., t/a Hoola Hoops, Third–Party Defendants

Nos. 4:CV–99–0610, 4:CV–99–0235.

United States District Court, M.D. Pennsylvania.

Aug. 30, 1999.

Mitchell Feigenbaum, Jeffrey Cooper, Mesirov Gelman Jaffe Cramer & Jamieson, Philadelphia, PA, for plaintiffs.

George W. Westervelt, Jr., Stroudsburg, for third-party defendant P.D.O., Inc., t/a Floods.

**MEMORANDUM**

McCLURE, District Judge.

**BACKGROUND:**

On February 11, 1999, plaintiffs Raymond P. Walsh, Sr., and Patricia Walsh, for themselves and as administrators of the estate of Michael T. Walsh, deceased, commenced this action with the filing of a complaint setting forth wrongful death and survival claims under Pennsylvania law. *See* 42 Pa. Cons.Stat. Ann. §§ 8301, 8302. According to the complaint, on July 4, 1998, Michael was a patron at the Front Row Bar, an establishment operated by defendant DWG Brownies, Inc., and was served alcohol despite being visibly intoxicated. After leaving the Front Row, Michael walked to an apartment rented by a friend where he fell from a stairway, causing injuries which resulted in Michael's death. The stairway was in an area controlled by defendant Robert Strenz and is alleged to have been in an unsafe condition.

On March 29, 1999, DWG Brownies filed a third-party complaint against third-party defendants P.D.O., Inc., and Blast 2 the Past Productions, Inc., alleging that Michael Walsh also was a patron at establishments operated by those companies, Floods and Hoola Hoops, respectively. Plaintiffs filed a complaint against P.D.O. and Blast 2 the Past on May 14, 1999, again setting forth wrongful death and survival claims.

Before the court is P.D.O.'s motion to dismiss the claims for punitive damages relating to the other claims against it, asserted both directly and by way of contribution.

**DISCUSSION:**

### I. STANDARD

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The complaint must be construed in favor of the plaintiff with every doubt resolved in the plaintiff's favor. *In re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 398, 422 (E.D.Pa.1981). That is, the court must accept as true all factual allegations set forth in the complaint as well as all reasonable inferences that can be drawn from them. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan* at 1261. "[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Whether a plaintiff will ultimately prevail is not a consideration for review of a motion under Rule 12(b)(6). *Nami* at 65.

P.D.O. seeks dismissal of the claim for punitive damages, in part, because its alleged conduct does not warrant the imposition of punitive damages. This aspect of the motion to dismiss may be addressed summarily. Without further development of the record relating to P.D.O.'s conduct, we cannot presume that a punitive damages award would not be supportable. The motion to dismiss will be denied insofar as it relates to the issue of whether P.D.O.'s conduct would warrant the imposition of punitive damages. P.D.O.'s otherwise contends that, under Pennsylvania law, a plaintiff may not recover punitive damages in a wrongful death action.

### II. FACTUAL ALLEGATIONS

On the evening of July 4, 1998, according to the complaint, Michael Walsh was a patron at the Front Row Bar. After his arrival, he purchased and consumed numerous alcoholic beverages before "last call." Michael was visibly intoxicated

when he was sold at least one alcoholic beverage.

Michael left the Front Row in the early morning hours of July 5, 1998, and walked to an apartment rented by a friend. There, he was climbing a staircase and fell from the stairs between the second and third floors of the apartment building. The fall caused injuries which resulted in Michael's death.

According to the complaints against P.D.O. and Blast 2 the Past, Michael also was a patron at establishments operated by those companies on the evening of July 4–5, 1998, and was served alcoholic beverages while visibly intoxicated.

### III. WRONGFUL DEATH AND SURVIVAL ACTIONS IN PENNSYLVANIA

A wrongful death action in Pennsylvania did not exist under the common law, but is a statutory cause of action under 42 Pa. Cons.Stat. Ann. § 8301. *Tulewicz v. SEPTA,* 529 Pa. 588, 606 A.2d 427, 431 (1992); *Hodge v. Loveland,* 456 Pa.Super. 188, 690 A.2d 243, 245 (1997), *reargument denied, allocatur denied,* 555 Pa. 701, 723 A.2d 672 (1998) (table). Its purpose is to compensate the enumerated relatives for the pecuniary loss in the form of lost earnings occasioned by the death, as well as services the decedent would have performed for the family. *Hodge* at 245–246; *Slaseman v. Myers,* 309 Pa.Super. 537, 455 A.2d 1213, 1218 (1983). Although brought by the personal representative of the estate of the decedent, the action is brought on behalf of the decedent's survivors and not the estate. *Tulewicz* at 431; *Hodge* at 246. The wrongful death statute is subject to strict construction. *Hodge* at 249.

A survival action under 42 Pa. Cons.Stat. § 8302 is brought by the decedent's personal representative for the benefit of the estate. *Kiser v. Schulte,* 538 Pa. 219, 648 A.2d 1, 4 (1994). It is not a new cause of action but continues in the personal representative the right of action which accrued to the decedent at common law as a result of the tort. *Id.; Tulewicz* at 431. Damages include the decedent's pain and suffering, loss of gross earning power from the date of injury until death, and the loss of earning power less personal maintenance expenses from the time of death through the decedent's estimated working life span. *Kiser* at 4.

The question presented is whether the wrongful death statute permits plaintiffs to recover punitive damages. The Pennsylvania Superior Court has held that punitive damages are not available, *Harvey v. Hassinger,* 315 Pa.Super. 97, 461 A.2d 814, 815–816 (1983), a conclusion which plaintiffs challenge directly. The Supreme Court of Pennsylvania has not addressed the question under the present statute, and so we must predict how that court would hold.

Given that punitive damages are available in a survival action if the decedent could have recovered them if he or she had lived, *Harvey* at 816, one may question the importance of this issue. That is, when a plaintiff has a valid wrongful death action, the decedent would have had a tort action, and the tort action continues in the survival action. If the punitive damages are recoverable in the survival action, what difference does it make if they are unavailable otherwise?

The answer lies first in the tax consequences of the award. Of course, punitive damages recovered in a tort action are taxable because they are not received on account of a personal injury within the meaning of 26 U.S.C. § 104(a)(2). *O'Gilvie v. United States,* 519 U.S. 79, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996). The importance lies in the area of estate and inheritance taxes. The importance of protecting the estate of the decedent as well as creditors of the estate is embodied in 20 Pa. Cons.Stat. Ann. § 3323, which requires court approval of any settlement of a survival action. *In re Estate of Merryman,* 669 A.2d 1059, 1060

n. 1 (Pa.Commw.1995). When the settlement involves both wrongful death and survival claims, court approval of the apportionment of the settlement monies to the survival claim also is necessary. *Id.*

If the damages received as punitive damages are for the benefit of the estate, then, a portion of the damages will be paid as a federal estate tax, *see* 26 U.S.C. §§ 2001 et seq., and/or a Pennsylvania inheritance tax, *see* 72 Pa. Stat. Ann. §§ 9101 et seq. If the damages are for the benefit of the survivors, they may be subject to income taxation, but are not subject to the estate and inheritance taxes.

Besides the tax implications, there are the consequences to the estate's creditors. Under the wrongful death statute, damages are taken by the survivors "without liability to the creditors of the deceased person ..." Sec. 8301(b). *See also Merryman* at 1061 and 1061 n. 4. No such rule applies to a survival action. *See* § 8302. If punitive damages are attributed to the wrongful death claim, then, the survivors may benefit while creditors of the estate may go unpaid.

We turn first to the standards governing our consideration of this issue.

### IV. PREDICTION OF STATE LAW IN FEDERAL COURT

"A federal court sitting with diversity jurisdiction applies the law of the state whose law governs the action, *Greater New York Mutual Insurance Co. v. North River Insurance Co.*, 85 F.3d 1088, 1091 (3d Cir.1996), which generally is the law of the forum state. *Clark v. Modern Group, Ltd.*, 9 F.3d 321, 326 (3d Cir.1993), *reh'g denied.*" *Shouey v. Duck Head Apparel Co., Inc.*, 49 F.Supp.2d 413, 417 n. 1 (M.D.Pa.1999). *See also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir.1998).

The federal court may not impose its view of what the state law should be, but must apply existing state law as interpreted by the state's highest court in an effort to determine how the state court would decide the precise legal issue before the federal court. *Koppers Co., Inc. v. Aetna Casualty and Surety Co.*, 98 F.3d 1440, 1445 (3d Cir.1996). In the absence of any precedent from the state's highest court, the federal court must predict how the state court would decide the issue. *Polselli v. Nationwide Mutual Fire Insurance Co.*, 126 F.3d 524, 528–529 n. 3 (3d Cir.1997). When predicting how the state's highest court would rule on the issue, the federal court must look to decisions of any intermediate state appellate court, other federal courts interpreting the law of the state, and other state supreme courts that have decided the issue, as well as analogous decisions, dicta, scholarly works, and any other reliable data which would tend to show convincingly how the state's highest court would rule. *Paolella* at 189; *Koppers* at 1445. Intermediate appellate court decisions are given "substantial weight" in the absence of any indication that the state's highest court would rule otherwise. *Polselli* at 529 n. 3.

*Shouey* at 423.

Under this standard, the Superior Court's decision in *Harvey* is not controlling but must be accorded substantial weight. That opinion is based on prior decisions of the Supreme Court of Pennsylvania, but those decisions were based on older statutes. There are sources which indicate that there is no substantial difference between the current statutes and the former statutes. *See* Historical and Statutory Notes following § 8301, Official Source Note (indicating that statute is "[s]ubstantially a reenactment of" the prior statutes); *Hodge* at 249 n. 4 (same). If so, the reasoning of the prior cases would continue to apply. One commentator has advocated broader forms of damages for wrongful death. Kathleen Gavigan, *Wrongful Death Damages in Pennsylva-*

*nia: A Suggestion for Expanded Recovery,* 22 DUQ. L. REV. 887 (1984). The next question, then, is whether there is a substantial difference in the statutes as they exist and when they were enacted originally. The comparison involves a short history lesson.

## V. DEVELOPMENT OF THE LAW OF WRONGFUL DEATH IN PENNSYLVANIA

It appears that, early in what may be called the "common law era" in England, damages for wrongful death were available to aggrieved relatives. Gavigan, *supra,* at 888 n. 10. *See also Penna. R. Co. v. Zebe,* 33 Pa. (9 Casey) 318 (1858) (recovery permitted under the civil law, Saxon code, and Scottish law). At some point, the common law ceased permitting such recovery, and no wrongful death action was allowed for some three hundred years before 1846. Gavigan, *supra,* at 888 n. 10. In that year, the first wrongful death statute, the Fatal Accidents Act, 1846, 9 & 10 Vict., ch. 93, known as Lord Campbell's Act, appeared in England. *Id.*

In Pennsylvania, damages for wrongful death were available before 1750, at which time the English common law rule was adopted. *Id.* This remained the law for about a century, when the Pennsylvania legislature passed, apparently in response to and in keeping with Lord Campbell's Act, the first statute relevant for present purposes. It read:

That whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow the personal representatives, may maintain an action for and recover damages for the death thus occasioned.

P.L. 669, No. 358, § 19 (Apr. 15, 1851) (formerly codified at 12 Pa. Stat. § 1601).[1] The legislature added the following enactment four years later:

That the persons entitled to recover damages for any injury causing death, shall be the husband, widow, children or parents of the deceased, and no other relative; and the sum recovered shall go to them in the proportion they would take his or her personal estate in the case of intestacy, and that without liability to creditors.

P.L. 309, No. 323, § 1 (Apr. 26, 1855) (formerly codified at 12 Pa. Stat. § 1602).

It was these statutes which were at issue in *Zebe.* In that case, Peter Zebe and his father exited a train on the side away from the platform and toward other tracks, and Peter was struck and killed by a passing train. 33 Pa. at 322. The Supreme Court of Pennsylvania held that damages for wrongful death under the statutes were limited to the pecuniary loss to the designated survivors. *Id.* at 329–330. Included were damages for "pecuniary value to [the parents] of [Peter's] services during his minority, together with expenses of care and attention to the deceased, arising out of the injury, funeral expenses, and medical services, if any." *Id.* at 330. Specifically excluded were "damages for the suffering of the deceased, ... as well as for solace..." *Id.* In reaching this conclusion, the Supreme Court cited a prior case which referred to the fact that such items of damages as the decedent's pain and suffering, disfigurement, and "whatever was merely personal to him," should not be considered because

---

1. Pennsylvania statutes at that time contained the following standard, introductory language:

   *Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same:*

   *See, e.g.,* P.L. 669, No. 358 (italics in original). Later, this language was shortened, as by using, *"Be it enacted, & c."* For the sake of brevity, this language is omitted from this and all other quotations from original enactments.

the right of action for such damages was personal to the decedent, not the survivors. *Id.*

The name and thinking of Lord Campbell were invoked again in *Penna. R. Co. v. Vandever,* 36 Pa. (12 Casey) 298 (1860), in which John Vandever was put off a train for not producing a ticket and refusing to pay the fare. Under the influence of alcohol, Vandever fell down an embankment into some large stones while attempting to retrieve his hat. After being moved on three occasions, he died about a week later. *Id.* at 298–299. The charge by the trial judge had the effect of leaving the question of damages entirely to the jury. *Id.* at 303.

Noting first that the question of what types of damages could be recovered was settled in *Zebe,* the Supreme Court then summarized the intent behind Lord Campbell's Act, *Vandever* at 303, and turned to a decision by Lord Campbell, then Lord Chancellor, the previous year. *Id.* at 303–304 (citing *The Attorney–General v. Brunning,* 3 *Law Times R. (N.S.)* 36). In that case, Lord Campbell indicated that damages in the event of death were limited to the pecuniary loss to the family of the deceased. *Id.* at 304 (quoting *Brunning* ). Because of the similarity of the statutes, the Supreme Court held, the same principles applied, and no recovery for *"solatium"* for wounded feelings or bereavement, nor "highly vindictive damages," were permitted. *Id.*

Lord Campbell paid his next visit to Pennsylvania judicature in 1865, when the Supreme Court decided *Penna. R. Co. v. Henderson,* 51 Pa. (1 P.F. Smith) 315 (1865). In that case, Joseph A. Henderson entered into an agreement whereby the Railroad would transport his livestock from Indiana (Pennsylvania) to Philadelphia. Henderson himself would travel by what was known as a "drover's pass." After the stock car was loaded, Henderson had to wait for a passenger car which was running behind schedule. He therefore repaired to a "public-house" to await its

arrival. On notification that his train had arrived, Henderson went to the platform and was waiting for the car to pull up when he was struck and killed by a train passing on the other side of the platform. *Id.* at 316.

Among a number of issues considered by the Supreme Court was the question of damages. The court wrote:

Under Lord Campbell's Act it was early settled in England, that the damages to be recovered were the pecuniary loss sustained by the family of the deceased, and did not include any of the damages that might have been claimed by the party injured if death had not resulted. It does not include the loss or suffering of the deceased, nor does it include the mental suffering of the survivor occasioned by such death, *and it excludes all questions of exemplary damages.* The damages are to be simply compensatory for the pecuniary loss sustained by the surviving family by reason of such death.

*Id.* at 323 (emphasis added).

Two events of note for present purposes occurred shortly after the turn of the century. First, the Supreme Court of Pennsylvania again held that exemplary damages were not available in wrongful death cases under the act of 1855. *Palmer v. Phila., B. & W.R. Co.,* 218 Pa. 114, 66 A. 1127 (1907). Second, the legislature amended the act of 1855 to read as follows:

That the persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; *and that such husband, widow, children, or parents of the deceased shall be entitled to recover, whether he, she, or they be citizens or residents of the Commonwealth of Pennsylvania, or citizens or residents of any other State or place subject to the jurisdiction of the United States, or of any foreign country, or subjects of any foreign potentate;* and the sum recovered shall go to them

in the proportion they would take his or her personal estate in the case of intestacy, and that without liability to creditors under the laws of this Commonwealth.

P.L. 678, § 1 (June 7, 1911)(emphasis in original; amending former § 1602). We think it evident that this amendment made no substantive change beyond allowing non-citizens and non-residents of Pennsylvania to bring an action under the act.

The Pennsylvania legislature later enacted the following:

That whenever any person or persons, who are authorized by law to do so, shall bring an action to recover damages for a death caused by unlawful violence or negligence of the defendant, the plaintiff may recover, in addition to the damages now recoverable in such actions, the expenses incurred for medical and surgical care and for nursing of the deceased, and such other expenses caused by the injury which resulted in death as could have been recovered in an action begun by the injured person in his lifetime; and plaintiff may also recover the reasonable funeral expenses of the deceased, if plaintiff has paid or incurred such expenses.

P.L. 992, No. 480, § 1 (May 13, 1927)(formerly codified at 12 Pa. Stat. § 1604).

The act of 1927 did not expand the types of damages recoverable in a wrongful death action to include such items as mental suffering, grief or distress of mind. *Gaydos v. Domabyl,* 301 Pa. 523, 152 A. 549, 552 (1930). Rather, damages remained the lost "pecuniary benefits which the persons authorized to sue would have received from the deceased had death not intervened." *Potter Title & Trust Co. v. Petcoff,* 122 Pa.Super. 540, 186 A. 320, 323 (1936)(footnote omitted). The act of 1927 merely supplemented the prior acts by designating certain other expenses which would be recoverable. *Id.*

Shortly thereafter, the act of 1855 was amended yet again, and read as follows:

That the persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; and that such husband, widow, children, or parents of the deceased shall be entitled to recover, whether he, she, or they be citizens or residents of the Commonwealth of Pennsylvania, or citizens or residents of any other state or place subject to the jurisdiction of the United States, or of any foreign country, or subjects of any foreign potentate; and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth. *If none of the above relatives are left to survive the decedent, then the personal representative shall be entitled to recover damages for reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of injuries causing death.*

P.L. 196, No. 48, § 1, (April 1, 1937)(amending former § 1602; italics in original).

The state of the law in Pennsylvania as embodied in these statutes was summarized by the Supreme Court of Pennsylvania in *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659, 660–661 (1942), *reh'g denied.* If a person was injured, instituted an action, and then died, the action could be continued by his or her personal representative, with the damages recoverable being the same as the decedent would have been entitled to recover had he or she survived. *Id.* at 660–661.[2] If the person died before filing suit, a wrongful death suit could be brought under the acts of 1851 and 1855, and a survival action could be brought under the act of 1937. *Id.* at 661. *See*

---

**2.** This rule was established by § 18 of the act of 1851; section 19 of that act is quoted above. Section 18 was repealed but reenacted by P.L. 447, § 35(a) (June 7, 1917)(formerly codified at 20 Pa. Stat. § 771).

*also id.* at 660 (citing P.L. 2755 (July 2, 1937), then codified at 20 Pa. Stat. §§ 321, 772).

> The one represents a cause of action unknown to the common law and is for the benefit of certain enumerated relatives of the person killed by another's negligence; the damages recoverable are measured by the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived. The other is not a new cause of action at all, but merely continues in his personal representative the right of action which accrued to the deceased at common law because of the tort; the damages recoverable are measured by the pecuniary loss occasioned to him, and therefore to his estate, by the negligent act which caused his death. These actions are cumulative and not alternative; ...

*Id.* at 661 (footnote summarizing other expenses added by 1927 amendment to former § 1604 omitted).

At issue in *Pezzulli* was the measure of damages recoverable in a survival action. The Supreme Court of Pennsylvania concluded that it was the same as that which was allowed in an action brought by the injured party who died, leaving the action to be pursued by his or her personal representative: those damages which the person could have recovered had he or she survived. *Id.* at 661–662. The Supreme Court emphasized that duplicate recovery was to be avoided, and indicated that a rule of civil procedure requiring consolidation and trial together of wrongful death and survival actions would be promulgated. *Id.* at 662.

The principles set forth in *Pezzulli* were restated in *Funk v. Buckley & Co., Inc.,* 158 Pa.Super. 586, 45 A.2d 918, 920–921 (1946).

The Pennsylvania legislature next took action in 1976, when the following was enacted:

§ 8301.  Death action.

(a) General rule.—An action may be brought to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages was brought by the injured individual during his lifetime.

(b) Beneficiaries.—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens of the Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

(c) Special damages.—The plaintiff in an action under subsection (a) shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

(d) Action personal representative.— If no person is eligible under subsection (b) to bring an action under this section, the personal representative of the deceased may bring an action for the damages expressly specified in subsection (c).

§ 8302.  Survival action.

All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

...

P.L. 586, No. 142, § 2 (July 9, 1976)(§ 8303, relating to damages for failing to perform a legal duty, omitted).

There have been two amendments to the above enactment. The first was related to

a separate, definitional provision which was necessitated by the addition of district justices to the Unified Judicial System of Pennsylvania. P.L. 1409, No.1982–326, art. II, § 201 (Dec. 20, 1982)(amending 42 Pa. Cons.Stat. § 102). The second was as follows:

> Section 8301(a) of Title 42 of the Pennsylvania Consolidated Statutes is amended to read:

> § 8301. Death action.
>
> (a) General rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no [**action for damages was brought by the injured individual during his lifetime.**] *recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.*

> \*     \*     \*     \*     \*     \*

P.L. 309, No.1995–46, § 1 (July 6, 1995)(bold, italics in original).

Having placed into historical context the wrongful death statute as it now exists, we must conclude that no substantial change in the law of wrongful death in Pennsylvania was effected by its enactment. In fact, the language of the statute embodies the act of 1855 and the adjustments made to it over the years. These include an enumeration of damages permitted by the Supreme Court of Pennsylvania in *Zebe* and its progeny, thereby codifying prior decisional law, as well as changes to the status of the party or parties who may bring the action.[3] Any addition to the damages per-

mitted in a wrongful death suit always have come by way of amendment to statutory law, not by decisional law.

Succinctly stated: (1) the current statute is substantially a reenactment of the act of 1855; (2) damages have been limited to "pecuniary loss" of the enumerated survivors, as well as certain designated damages, since there have been statutes permitting actions for wrongful death in Pennsylvania; and (3) the Pennsylvania legislature has taken no action to permit the recovery of punitive damages (or even damages for grief) in a wrongful death action.

## VI.  OTHER SOURCES

Looking to the authorities which the Third Circuit has instructed are proper sources of predicting how the state's highest court would rule, then, we find that: analogous decisions of the Supreme Court of Pennsylvania, i.e. those applying substantially the same law as was reenacted in 1976, are to the effect that punitive damages are not available in a wrongful death action; one of the state's intermediate appellate courts, the Superior Court, has held that punitive damages are not available, and we must give this holding substantial weight; and the one scholarly work on the topic, the Gavigan article, by pointing out the narrow recovery permitted and advocating broader recovery, indicates that punitive damages are not available.

Other federal courts, including this one, have held that the Pennsylvania wrongful death statute does not permit recovery of punitive damages. In *Estate of Cooper v. Leamer*, 705 F.Supp. 1081, 1085 (M.D.Pa. 1989), Judge Caldwell of this court held, "Clearly, no such right exists." In support of this conclusion, Judge Caldwell cited *Harvey*.

---

3. Another example is the statement in *Pezzulli* regarding a rule of civil procedure requiring consolidation and trial together of wrongful death and survival actions. *See* Pa. R. Civ. P. 213(e). A similar principle now is embodied

in § 8301(a), which requires consolidation with any action begun by the decedent during his or her lifetime, which becomes the equivalent of a survival action.

In *Skell v. Crown American Corp.*, 670 F.Supp. 153, 154 (W.D.Pa.1987), in permitting the plaintiffs to amend their complaint to add a claim for punitive damages, the court noted that a wrongful death action would not support a claim for punitive damages but that a claim for punitive damages could be pursued in the related survival action. Again, the court cited *Harvey*.

Finally, in *Wang v. Marziani*, 885 F.Supp. 74, 78–79 (S.D.N.Y.1995), the court concluded that punitive damages were not available under the Pennsylvania wrongful death statute. The court relied on *Harvey*, *Estate of Cooper*, and *Skell*. It also distinguished two cases on which plaintiffs in this case rely, *Burke v. Maassen*, 904 F.2d 178 (3d Cir.1990), *reh'g denied*, and *Zygmuntowicz v. Hospitality Investments, Inc.*, 151 F.R.D. 53 (E.D.Pa. 1993).

In *Burke*, the plaintiffs' decedent was killed when he was hit by a tractor-trailer while standing on the shoulder of the Pennsylvania Turnpike. *Id.* at 179. In an action asserting both wrongful death and survival actions against the driver and his employer, the jury returned a verdict in favor of the plaintiffs, and judgment was entered on the verdict as follows:

> It is further ORDERED that judgment is entered in favor of plaintiff against defendant Jeffrey Maassen in the amount of $300,000 in compensatory damages pursuant to Pennsylvania Survival Act and $100,000 in punitive damages. Judgment is entered in favor of plaintiffs against defendant Malone Freight Lines, Inc. in the amount of $200,000 in compensatory damages pursuant to the Survival Act; in the amount of $11,109 in compensatory damages pursuant to the Pennsylvania Wrongful Death Act; and in the amount of $600,000 in punitive damages.

*Id.* at 181 n. 3.

Since compensatory damages were not awarded against Burke under the wrongful death statute, we think it reasonable to presume (as did the court in *Wang*) to attribute the punitive damages to the Survival Act. Regardless, the statute under which the awards of punitive damages were made is not specified, and so the Third Circuit's opinion really has no bearing on the question of whether punitive damages may be recovered in a wrongful death action. Rather, the opinion in *Burke* deals with the standard for an award of punitive damages under Pennsylvania law. Since the plaintiffs did not introduce evidence sufficient to meet that standard, the awards of punitive damages were reversed. *Id.* at 183–184.

In *Zygmuntowicz*, the court recited:

> Pennsylvania allows for punitive damages in a wrongful death action where a party can show that the opposition knew that his action may significantly endanger others and then deliberately proceeded in disregard of that risk. *Burke v. Maassen*, 904 F.2d 178, 183 (3d Cir. 1990) *citing Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1096 (1985).

151 F.R.D. at 54. As discussed above, this is not the holding of *Burke*, in which the award of punitive damages was not attributed to either the wrongful death statute or the survival statute. The issue there was the standard for punitive damages, not their availability. Moreover, *Martin* was a strict products liability action under RESTATEMENT (SECOND) OF TORTS, § 402A, not a wrongful death or survival action.[4] The relevant discussion in *Martin*, as in *Burke*, was the standard for an award of punitive damages in Pennsylvania, not the availability of punitive dam-

---

**4.** The plaintiff appears to have died during the pendency of the appeal. *Martin* at 1092 n. 3. *See also Martin v. Johns–Manville Corp.*, 322 Pa.Super. 348, 469 A.2d 655, 657 n. 1 (1983). Neither opinion indicates whether the death was occasioned by the tort which was the subject of the litigation.

ages in a wrongful death action. Thus, the court's citation to *Burke* is in error. However, it should be noted that disposition of the motion to amend in *Zygmuntowicz* well may have resulted in attribution of the punitive damages to the survival action.

The upshot of the last three paragraphs is that there is no Third Circuit opinion on point and no convincing authority otherwise which supports the proposition that a plaintiff may recover punitive damages in a wrongful death action in Pennsylvania. The weight of the authority of federal courts interpreting the law of Pennsylvania strongly favors the conclusion that punitive damages are not recoverable.

Because the availability of punitive damages in a wrongful death action is premised on statutory authority, *compare Old Republic Union Insurance Co. v. Tillis Trucking Co., Inc.,* 124 F.3d 1258, 1260 n. 1 (11th Cir.)(Alabama Wrongful Death Act, Ala.Code § 6–5–410, as construed by state supreme court, provides for recovery of punitive damages [5]), *reh'g, reh'g en banc denied,* 132 F.3d 1462 (11th Cir.1997)(table), *cert. denied,* 118 S.Ct. 1363, 140 L.Ed.2d 513 (1998), *with Childs v. United States,* 923 F.Supp. 1570, 1584 (S.D.Ga.1996)(punitive damages not available under Georgia's wrongful death statute); *Mundell v. Beverly Enterprises–Indiana, Inc.,* 778 F.Supp. 459, 464 (S.D.Ind.1991)(punitive damages not available under Indiana's wrongful death statute), the opinions of federal courts applying the law of jurisdictions other than Pennsylvania are not particularly helpful. One opinion of note, due to the similarity of the statutes, is *Sterner v. Wesley College, Inc.,* 747 F.Supp. 263, 268–270 (D.Del. 1990), in which the court concluded that punitive damages were available under the Delaware survival statute but not the wrongful death statute. Generally speak-

ing, however, these opinions do not affect our decision.

## VII. CONCLUSION

■ Based on all of the foregoing, the authorities on which we are to rely in predicting how the Supreme Court of Pennsylvania would resolve this issue, at least those which have weight in this process, all point to one conclusion: punitive damages are not available in an action for wrongful death in Pennsylvania. The motion to dismiss filed by P.D.O. will be granted in part and denied in part.

An order consistent with this opinion will issue.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (record document no. 19) by third-party defendant P.D.O., Inc., t/a Floods, to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is granted in part and denied in part, as follows:

   (a) The motion is granted as to the claims for punitive damages in the wrongful death actions;

   (b) The motion otherwise is denied.

2. The dismissal shall apply to the wrongful death claims asserted against all defendants and third-party defendants.

---

**5.** The Alabama Wrongful Death Act appears to provide a cause of action more akin to the Pennsylvania survival statute in that it refers to claims the decedent could have made if he or she had survived.